Filed 10/6/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RICHARD STEVENSON et al., | C080685 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2015-80002125-CU-WM-GDS) |
| v. | |
| CITY OF SACRAMENTO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W.L. Chang, Judge.  Affirmed.

Paul Nicholas Boylan for Plaintiffs and Appellants.

Cannata, O'Toole, Fickes & Almazan and Karl Olson for The Sacramento Bee, First Amendment Coalition, Reporters Committee for Freedom of the Press and Others as Amici Curiae on behalf of Petitioners and Appellants.

James Sanchez, City Attorney, and Andrea M. Velasquez, Senior Deputy City Attorney, for Defendant and Respondent.

Cota Cole & Huber and Derek P. Cole for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Defendant and Respondent.

1

Under Code of Civil Procedure section 529,[1] a court generally must require a party who has obtained a preliminary injunction to post an undertaking in an amount determined by the court. Courts set this amount based on their estimate of the harmful effect the injunction is likely to have on the restrained party and, in the event they later conclude the injunction was wrongly issued, they may require some or all of this amount to be distributed to the restrained party to compensate it for the harm it suffered. These requirements provide a measure of protection to parties who are mistakenly enjoined.

The question here is whether parties enjoined under the California Public Records Act (the PRA; Gov. Code, § 6250 et seq.) are entitled to section 529's protections. Appellants Richard Stevenson and Katy Grimes contend they are not for two general reasons. First, they allege section 529's undertaking requirement conflicts with the PRA's own requirements. Second, they assert that requiring a party to post an undertaking before obtaining an injunction is an unlawful prior restraint under the First Amendment. Because we find neither argument persuasive, we affirm the trial court's order requiring appellants to post an undertaking as a condition to obtaining their requested injunction.

BACKGROUND

Government Code section 34090 authorizes the heads of city departments, "with the approval of the legislative body by resolution and the written consent of the city attorney," to destroy most city records that are at least two years old unless the law requires otherwise. Based on this authority, the city council for respondent City of Sacramento (Sacramento or the City) adopted a resolution in 2007 approving the destruction of records as allowed under Government Code section 34090 and authorizing its city clerk to adopt a new records retention policy.

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

Acting pursuant to this resolution, Sacramento's city clerk adopted in 2010 a new records retention schedule allowing the destruction of all correspondence, including e-mails, older than two years old, subject to certain exceptions. But because Sacramento lacked the technological ability to automatically delete older e-mails at the time, it delayed implementing this policy for several years.

In 2014, Sacramento finally attained the technological ability to automatically delete older e-mails under its 2010 policy. Before moving forward to delete these e-mails, the City informed various media and citizen groups around December of 2014 that it would begin automatically deleting e-mails under its 2010 policy on July 1, 2015.

In late June of 2015, less than a week before Sacramento planned to begin deleting its older e-mails, appellants each submitted requests to the City for records set for destruction. Both submitted their requests under the PRA—an act that "provide[s] the public with a right of access to government information." (*Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 164; see Gov. Code, § 6253.) Stevenson requested "[a]ll emails currently scheduled to be deleted from City records July 1, 2015," and Grimes requested, among other things, all e-mail records "by the City of Sacramento and its employees, elected and appointed officials and anyone acting on the City's behalf from January 1, 2008 until the present date." At the time, Sacramento was retaining about 81 million e-mail records. Stevenson's request concerned about 53 million of these records, and Grimes's request concerned about 64 million. Sacramento staff estimated it would take well over 20,000 hours to comply with appellants' requests.

Sacramento informed appellants that their requests were excessive but offered to postpone its planned deletion date by a week to allow appellants an opportunity to narrow the scope of the records they sought. Appellants, in response, agreed to narrow the scope of their requests. But at the same time, they sued Sacramento for "refus[ing] to provide Petitioner's [*sic*] access to the records they request" in violation of the PRA and the California Constitution.

3

On the same date they filed suit, appellants also asked the trial court to issue a temporary restraining order barring Sacramento from deleting records potentially responsive to their requests. Without considering the merits of the request, the court issued a temporary restraining order for the sole purpose of maintaining the status quo. The court also scheduled a follow-up hearing to consider whether a preliminary injunction should issue, and directed appellants to submit, in advance of that hearing, new PRA requests to address the City's objections that the initial requests were too broad. The following day, appellants submitted new requests covering 30 categories of records. Sacramento identified about 15 million potentially responsive e-mails.

A month later, the court granted appellants' request for a preliminary injunction and directed Sacramento to preserve the 15 million potentially responsive e-mails. But the court, over appellants' objection, conditioned the grant of the injunction on appellants posting an undertaking per section 529—a statute providing that courts, on granting an injunction, must require the moving party to post an undertaking. (§ 529, subd. (a).) The court initially set the undertaking in the amount of $80,000 based on Sacramento's representations that it would need to expend over $80,000 a year to retain all its e-mails indefinitely. But the court afterward reduced the undertaking amount to $2,349.50, following supplemental briefing in which Sacramento said it in fact anticipated expending as little as $2,349.50 to comply with the injunction.

Appellants timely appealed, alleging the trial court wrongly required them to post an undertaking in connection with the injunction.[2]

---

[2]     According to appellants' counsel at oral argument, following the appeal, the City produced "many thousands of emails in a rolling production" and appellants, at some point, decided they had received the records they wanted and "waived their claim to any further records." He added that, since the appeal, he has paid "a little over $150 per year" to maintain the bond for the injunction.

4

DISCUSSION

I

Appellants first contend that section 529's undertaking requirement conflicts with the PRA's own requirements and is thus inapplicable in PRA cases. In support, they rely on two principles of statutory construction—namely, the principles that (1) a specific statute controls over a general statute in the event of conflict, and (2) a more recent statute controls over an older statute when the two conflict. But because we find no conflict between section 529 and the PRA, we find neither principle applicable.

A

Sections 525 through 533 provide the primary statutory authority for injunctions pending trial. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 9:501, p. 9(II)-2.) Under section 529, a court, on granting an injunction, "must require an undertaking on the part of the applicant to the effect that the applicant will pay to the party enjoined any damages, not exceeding an amount to be specified, the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." (§ 529, subd. (a).) This rule serves to afford compensation to parties who are ultimately found to have been wrongly enjoined. (*City of South San Francisco v. Cypress Lawn Cemetery Assn.* (1992) 11 Cal.App.4th 916, 922.)

Compliance with section 529's requirements is typically a necessary condition to obtain a valid preliminary injunction. (See *Biasca v. Superior Court* (1924) 194 Cal. 366, 367 [an undertaking under § 529 is "definitely" required in connection with a preliminary injunction]; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1024 (*Paiva*) [absent an exception, "the filing of an undertaking in connection with the issuance of a preliminary injunction is required by statute"]; *Griffin v. Lima* (1954) 124 Cal.App.2d 697, 699-700 [§ 529's undertaking requirement is "expressly required" and "mandatory"].)

5

But several statutes expressly exempt certain parties from section 529's requirements. Some of these statutes supply general exemptions that apply in all cases involving injunctions. Section 529, subdivision (b)(3), for example, exempts public entities from its requirements. Other statutes offer narrower exemptions for specific statutory schemes. For example, a student injured by an educational travel organization's false advertising may seek injunctive relief without needing to post an undertaking. (Bus. & Prof. Code, § 17556, subd. (a); see also *id.*, § 17555.) Similarly, an Indian tribe seeking to enjoin certain gaming activities need not post an undertaking "in connection with any action to seek the preliminary or permanent injunction." (§ 1811, subd. (a).) Similar exceptions also exist for a variety of other statutory schemes. (See, e.g., Civ. Code, § 1812.602; Pub. Res. Code, § 30803, subd. (a).)

The PRA, however, is not one of those statutory schemes that specifically bars application of section 529. Although it expressly allows parties to obtain an injunction (Gov. Code, § 6258), it says nothing at all on the topic of undertakings.

B

With that background in mind, we now turn to appellants' offered reasons for finding section 529's undertaking requirement impermissibly conflicts with the PRA's own requirements.

First, they contend the PRA and section 529 conflict because both discuss injunctions, but only section 529 discusses the need for an undertaking. (See § 529; Gov. Code, § 6258.)[3] This variance, they claim, is enough to invoke the rule of statutory construction " 'that a specific provision prevails over a general one relating to the same

---

[3] Government Code section 6258 provides the following in relevant part: "Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record or class of public records under this chapter."

subject.' [Citation.]" (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 942 (*Pacific Lumber*).) But that rule "only applies when an *irreconcilable* conflict exists between the general and specific provisions." (*Id.* at pp. 942-943, italics added.) And we find no such conflict here. Section 529, as appellants accept, provides a general rule: in the event the court grants an injunction, it *must* require the party that obtained the injunction to post an undertaking. (See *Paiva*, *supra*, 168 Cal.App.4th at p. 1024; *Griffin v. Lima, supra*, 124 Cal.App.2d at p. 700.) But the PRA offers no conflicting specific rule. It in fact says nothing at all on the topic of undertakings. We thus decline to find the requisite irreconcilable conflict.

Consideration of how courts have treated similar statutory schemes strengthens this conclusion. Various statutory schemes specifically allow for injunctive relief, yet many, like the PRA, are silent about the need for an undertaking. That is true, for example, of California's Safe Drinking Water and Toxic Enforcement Act of 1986, more commonly known as Proposition 65. Proposition 65 expressly authorizes courts to enjoin those who violate or threaten to violate its provisions but says nothing about whether an undertaking is required. (Health & Saf. Code, § 25249.7.) Courts nonetheless have found section 529's undertaking requirement applicable in Proposition 65 cases. (*Mangini v. J.G. Durand International* (1994) 31 Cal.App.4th 214, 218-219 (*Mangini*).)[4] And reasonably so. In both Proposition 65 and the PRA, the Legislature certainly could

---

[4] Although the court in *Mangini* found section 529 applicable in the case before it, it went on to suggest that courts might "have the power to order a nominal bond or to waive any bonding requirement as a condition to issuing a preliminary injunction in 'environmental' litigation." (*Mangini, supra,* 31 Cal.App.4th at pp. 219-220, italics omitted.) Perhaps some litigants will contend, along these lines, that courts have the discretion to waive bonding or undertaking requirements as a condition to issuing a preliminary injunction in PRA cases. But appellants, at least in their opening brief, offer no argument about the trial court's discretion to waive these requirements. They instead contend the court had no discretion at all to require any undertaking under section 529.

7

have included a specific exemption from section 529's requirements had it wanted. Indeed, the Legislature has done so for various other laws that specifically do away with any undertaking requirement.  (See, e.g., § 1811, subd. (a); Bus. & Prof. Code, § 17556, subd. (a).)  But for whatever reason, the Legislature did not provide a similar exception in the PRA.  And its declining to do so is telling, as we " ' "must assume that the Legislature knew how to create an exception if it wished to do so . . . ."  [Citation.]' [Citation.]" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 992.)

Second, appellants assert that the PRA describes the specific costs that PRA applicants can be expected to pay, and those costs are expressly limited to copying costs and, in frivolous cases, court costs and attorney fees.  In support, appellants point to Government Code section 6253, subdivision (b)—which allows public agencies to charge those seeking records "fees covering direct costs of duplication" or "a statutory fee if applicable"—and Government Code section 6259, subdivision (d)—which requires courts to award "court costs and reasonable attorney's fees to the public agency" when the "requester's case is clearly frivolous."  But that the Legislature found PRA applicants should be required to pay certain specific costs does not mean the Legislature, by implication, believed PRA applicants should be exempt from other generally applicable requirements.  Or to put it differently, that the Legislature expressly granted public agencies certain protections in PRA cases (e.g., the right to be reimbursed for the cost of duplication) does not mean the Legislature implicitly took away other protections provided by law (e.g., § 529's undertaking requirement).  (See *Pacific Lumber, supra*, 37 Cal.4th at pp. 942-943 [requiring "irreconcilable conflict" to invoke the rule that a specific provision prevails over a general one].)  Had the Legislature in fact intended to remove from PRA cases any undertaking requirement—a fundamental feature of injunction procedure—we would expect the Legislature to have spoken far more clearly. (See *DiCampli-Mintz v. County of Santa Clara, supra*, 55 Cal.4th at p. 992.)

Third, appellants suggest that accepting the trial court's ruling will leave indigent litigants unable to pursue PRA cases—conflicting with the PRA's purpose to allow the public broad access to public records. California law, however, already allows courts to except indigent parties from section 529's undertaking requirements. California's Bond and Undertaking Law (§ 995.010 et seq.) generally governs all bond and undertaking requirements, including those in section 529. (§ 995.020, subd. (a); see *Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 740.) And this law expressly grants courts discretion to "waive a provision for a bond in an action or proceeding . . . if the court determines that the principal is unable to give the bond because the principal is indigent and is unable to obtain sufficient sureties, whether personal or admitted surety insurers." (§ 995.240.) Appellants, however, never acknowledge these protections for indigent plaintiffs in their briefing.[5]

Fourth, appellants contend that "[a]ny restriction to the public's right to access records"—including any undertaking requirement—"must be expressly and unambiguously stated by the Legislature within the PRA; if not, the restriction is invalid." But this position proves too much. Although, as appellants note, the California

---

[5]     At oral argument, appellants' counsel said one of the appellants had sought to be exempted from section 529's undertaking requirements based on his indigency but the court never acted on the request. But that is only half right. In one of their briefs concerning the injunction, appellants asserted that, if a bond is required, it "should be directed to Petitioner Grimes only because Petitioner [Stevenson] is indigent." But the court did not, as appellants' counsel indicated, ignore this request. It instead declined to grant the request because no evidence showed Grimes was also indigent. It reasoned: "When there is more than one Petitioner in a matter, the Court is directed to consider the combined financial statuses of those seeking a preliminary injunction. (See *Alshafie v. Lallande* (2009) 171 Cal.App.4th 421, FN. 11.) While the Court agrees that it would be improper to order Petitioner [Stevenson] alone to obtain an undertaking in light of his indigent status, this does not permit the Court to excuse the requirement of an undertaking in light of the absence of any evidence of Ms. Grimes's financial status." Because appellants never challenge this conclusion, we need not consider it further.

9

Constitution requires courts to narrowly construe statutes limiting the right of access to public records (Cal. Const., art. I, § 3, subd. (b)(2)), that requirement does not nullify unambiguous statutory requirements. For that reason, for example, a plaintiff seeking relief under the PRA must still pay various court filing fees absent a waiver—even though these fees incidentally burden the plaintiff's right to access public records. (See, e.g., Gov. Code, §§ 70611, 70617; see also *id.*, § 68630 et seq.) So too, we find, must a PRA plaintiff, absent a waiver, comply with section 529 when applicable.

Fifth, appellants assert the trial court wrongly imported section 529's requirements into the PRA, even though the PRA is silent on the issue. But this argument suggests the default rule is that section 529 does not apply unless another statutory scheme, like the PRA, specifically incorporates it. The law, however, is otherwise. Application of section 529 is the default rule, not the other way around. (See *Paiva*, *supra*, 168 Cal.App.4th at p. 1024 [absent an exception, "the filing of an undertaking in connection with the issuance of a preliminary injunction is required by statute"].)[6]

Finally, we address briefly the arguments of certain amici curiae who, like appellants, contend section 529 conflicts with the PRA. Their first argument relies on Government Code section 6259, subdivision (d), which, again, requires courts to award

---

[6] Appellants also raise two additional arguments in their reply brief and in their response to one of the amici curiae briefs. In their reply brief, they contend we should find an exception to section 529's requirement exists to preserve a court's subject matter jurisdiction. They reason that absent an injunction here, "the very records at issue would have been destroyed, depriving the trial court of subject matter jurisdiction and rendering Appellant's [*sic*] case moot." In their response to the amici curiae brief on Sacramento's behalf, they also ask that we consider an "alternative" "litigation hold" argument— though they offer no authority or analysis to support this argument. But because they failed to raise these arguments in their opening brief, without good cause, we find both arguments forfeited. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8; see also *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

"court costs and reasonable attorney's fees to the public agency" when the "requester's case is clearly frivolous." In their view, Government Code section 6259's specific requirements override section 529's general requirement based on the rule of statutory construction that a specific provision prevails over a general one relating to the same subject. (See *Pacific Lumber, supra*, 37 Cal.4th at p. 942.) But again, this rule "only applies when an irreconcilable conflict exists between the general and specific provisions." (*Id.* at pp. 942-943.) And we find no conflict at all between the two mentioned statutes, let alone an irreconcilable one. That public agencies are entitled to court costs and attorney fees in frivolous PRA cases, per Government Code section 6259, does not somehow conflict with the right of public agencies to demand an undertaking under section 529.

Second, appellants' amici contend it would be "absurd" to find that public agencies "*never* have to post a bond," per section 529, subdivision (b)(3), but private individuals seeking injunctions against public agencies under the PRA "*always* have to post a bond." But we do not find it absurd that the Legislature opted to exempt public agencies from section 529's requirements but not private individuals. In any event, amici's premise that individuals "*always* have to post a bond" when seeking injunctions under the PRA is incorrect. Again, courts have discretion to exempt indigent individuals from bonding requirements. (§ 995.240.)[7]

---

[7] These amici also raise an entirely different issue, contending the trial court need never have even considered whether an injunction was appropriate. In their view, a litigant who asks a governmental entity to produce records under the PRA has, by the request alone, obligated that entity to retain the requested records indefinitely. As a general matter, however, "we do not consider new arguments raised on appeal by amicus curiae." (*California Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488, 498; see also *In re Marriage of Oddino* (1997) 16 Cal.4th 67, 82, fn. 7.) We thus decline to address amici curiae's alternative argument here.

11

Appellants next contend that requiring a party seeking records under the PRA to post a bond "is an unlawful prior restraint" under the First Amendment. We disagree.

A "prior restraint," for First Amendment purposes, is a governmental action " ' "*forbidding* certain communications when issued in advance of the time that such communications are to occur." [Citation.] Temporary restraining orders and permanent injunctions—i.e., court orders that actually forbid speech activities—are classic examples of prior restraints.' [Citation.]" (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 886.)

But the trial court here did not forbid appellants from engaging in any communications. It simply asked them to post an undertaking per section 529. And requirements of this sort, which are not concerned with speech at all, are not prior restraints within the meaning of the First Amendment simply because they may incidentally affect expression. (See *Thomas v. Chicago Park Dist.* (2002) 534 U.S. 316, 322-323 [content-neutral permit scheme regulating speech in a public forum was not a prior restraint on speech]; *DVD Copy Control Assn., Inc. v. Bunner, supra*, 31 Cal.4th at p. 886 ["*only* content-based injunctions are subject to prior restraint analysis"].)

## DISPOSITION

The court's order is affirmed.  Respondent Sacramento is entitled to recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

<table>
<tr><td></td><td>_____/s/_____</td></tr>
<tr><td></td><td>BLEASE, Acting P. J.</td></tr>
</table>

We concur:

_____/s/_____
MURRAY, J.

_____/s/_____
BUTZ, J.*

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.